# FRANK J. MONGILLO, JR. *v.* COMMISSIONER OF TRANSPORTATION
## (13817)

PETERS, C. J., SHEA, COVELLO, HULL and SANTANIELLO, Js.

Argued December 13, 1989—decision released March 20, 1990

*Michael P. Kamp,* with whom, on the brief, was *William D. Hart III,* for the appellant (plaintiff).

*Lawrence G. Widem,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (defendant).

SANTANIELLO, J. In this action the defendant commissioner of transportation (commissioner) filed an assessment of damages pursuant to General Statutes 13a-73 in taking two and four-tenths acres of property owned by the plaintiff, Frank J. Mongillo, by eminent domain. The property was needed to create artificial wetlands that would replace natural wetlands destroyed during the construction of a highway. The parties had previously agreed, in a prior inverse condemnation action; *Mongillo* v. *Burns,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-82-0274966S (May 24, 1983); to a stipulated judgment that set the price for future acquisitions of the plaintiff's property under special circumstances. Thereafter, the defendant instituted a new condemnation proceeding with a subsequent assessment of damages based on the alleged acquisition price specified in the stipulated judgment.

The plaintiff appealed the assessment to the Superior Court pursuant to General Statutes § 13a-76. The appeal was referred to *Hon. Louis Shapiro,* state trial referee, and was dismissed on the ground that the prior stipulated judgment gave the defendant the right to acquire the plaintiff's property at $14,537 per acre if the state needed additional land because of a change in the design of the highway. From that judgment the plaintiff appealed to the Appellate Court, and the appeal was transferred to this court pursuant to Practice Book § 4023. The issue before this court is whether the trial referee erred in concluding that the stipulated judgment is applicable to this transaction.

The underlying facts are as follows. In 1976, the plaintiff inherited fifty-six acres of land in central Con-

necticut. A highway construction map filed by the state under General Statutes § 13a-57 had indicated that a portion of the plaintiff's property was intended to be acquired for use in constructing a proposed highway known as the Central Connecticut Expressway. The plaintiff, who was obliged to pay a substantial estate tax on the inherited property, sought an advance acquisition by the state. He brought an inverse condemnation action against the state, alleging that the proposed highway constituted a taking without just compensation. The Superior Court, *Hale, J.,* rendered judgment dismissing the action on April 13, 1982. The plaintiff subsequently brought an inverse condemnation action in federal court. After dismissal of the federal court action, the plaintiff brought a second inverse condemnation action in the Superior Court. While this action was pending, negotiations were conducted between the plaintiff and Donald Leavitt, director of rights of way for the department of transportation. An agreement was reached between the parties and a stipulated judgment was rendered by the Superior Court on May 24, 1983. The stipulated judgment provided for the acquisition of approximately twenty acres of the plaintiff's property by the defendant at the appraised value of $14,537 an acre for use in the construction of a highway. The following clause was contained in the stipulated judgment: "In the event it become [sic] necessary due to a *shift in the highway* to take additional land the plaintiff agrees to allow the Department of Transportation to take said additional land at the price of $14,537.00 per acre." (Emphasis added.)

Pursuant to the stipulated judgment, the plaintiff executed a deed dated October 12, 1983, that conveyed twenty-one and one-half acres of land at the agreed price to the state and also contained the following: "together with the right of the State of Connecticut to acquire additional land from the grantor herein, his

heirs and assigns, due to a *change in the design* of the Central Connecticut Expressway, this right to terminate upon completion of said expressway." (Emphasis added.) This clause was inserted at the request of Leavitt. The deed was properly executed and signed by the plaintiff.

The department of transportation subsequently sought a wetlands permit from the United States army corps of engineers. The corps required the department in designing the highway to create wetlands in replacement of the wetlands that would be destroyed during construction. The commissioner then instituted a new condemnation proceeding on October 9, 1987, for an additional two and four-tenths acres of the plaintiff's property, assessing damages at $14,537 per acre in accordance with the value stated in the stipulated judgment. The plaintiff appealed the assessment, and the commissioner raised two special defenses, asserting that the plaintiff was bound by the stipulated judgment and that the commissioner had not waived any contractual rights in bringing the condemnation action.

At the hearing before the trial referee, Leavitt testified that during the negotiations prior to the stipulated judgment, the plaintiff's concern had been that no additional land be taken by the state for a service station, restaurant, or other commercial use. He further testified that the plaintiff had been aware that the highway design was subject to change and that an advance acquisition by the state is unusual because highway construction projects often require significant design changes. According to Leavitt, the agreement expressed in the stipulated judgment was an attempt to accommodate the plaintiff because of his federal tax obligations.

The plaintiff testified that during the negotiations on further acquisition of land Leavitt had referred to a

shift in the "center line" of the highway. Under the plaintiff's interpretation, the phrase "shift in the highway" that was used in the stipulated judgment required conveyance of additional land at $14,537 per acre only when there was a shift in the center of the path of the highway. Leavitt denied making any reference to the "center line."

In his memorandum of decision, the trial referee found that the concept of a shift in the "center line" had no foundation in the case. After considering the language of the deed and the testimony, the trial referee concluded that the acquisition of land in the present case was within the scope of the stipulated judgment. We agree.

A person is entitled to just compensation when property is taken by eminent domain. Conn. Const., art. I, § 11. What constitutes just compensation, however, may be determined by a prior agreement. See *Bradley Facilities, Inc.* v. *Burns,* 209 Conn. 480, 551 A.2d 746 (1988); *Colaluca* v. *Ives,* 150 Conn. 521, 191 A.2d 340 (1963). A judgment by the consent of the parties constitutes an agreement between the parties entered upon the record with the sanction and approval of the court. *Schurr* v. *Austin Galleries of Illinois, Inc.,* 719 F.2d 571, 574 (2d Cir. 1983); *Owsiejko* v. *American Hardware Corporation,* 137 Conn. 185, 187, 75 A.2d 404 (1950).

When there are multiple writings regarding the same transaction, the writings should be considered together to determine the intent of the parties. *Schubert* v. *Ivey,* 158 Conn. 583, 587, 264 A.2d 562 (1969); *Cooper* v. *Malavese,* 24 Conn. Sup. 168, 188 A.2d 266, cert. denied, 150 Conn. 717, 197 A.2d 928 (1962). The initial agreement in the present case, entered as a stipulated judgment, provided for future acquisition of property at $14,537 an acre if needed by the defend-

ant due to a "shift in the highway." The plaintiff asserts that he understood the phrase "shift in the highway" to mean that only a shift in the actual course of the proposed highway would require him to convey property at $14,537 an acre. This assertion is not supported by the language in the deed. The opaque language of the stipulated judgment is given illumination by the provision in the deed for acquisition due to any "change in the design" of the highway. We find the broader language in the deed to be a clarification of the terms used in the stipulated judgment. When the documents are read together, it is evident that the parties intended that the commissioner would have the right to acquire land from the plaintiff at the stated price if the commissioner needed more land due to design changes in the proposed highway. The state's subsequent need for wetlands mitigation required a change in the design of the highway,[1] thereby giving the defendant the right to acquire property at the agreed price.

The circumstances surrounding this transaction support the conclusion that the deed was a clarification of the stipulated judgment. There was testimony that prior to the stipulated judgment the plaintiff's concern was that no additional land be taken for commercial use. There is no indication that the parties' position concerning future acquisition had changed at the time the deed was executed. The deed was between the same parties, as part of the same transaction. The deed refers to rights of future acquisition without any indication that it is modifying a prior agreement. The plaintiff, an attorney, signed the deed and thus gave his full assent to the language therein. The language used in the deed removed any ambiguity in the provisions of the stipulated judgment. See *Tepfer* v. *Deerfield Sav-*

---

[1] The trial referee heard testimony from the current director of rights of way that wetlands mitigation required a change in the design of the highway. The plaintiff did not dispute this contention.

*ings & Loan Assn.,* 118 Ill. App. 3d 77, 80, 454 N.E.2d 676 (1983); *Prater* v. *Rush,* 228 Mo. App. 922, 927, 74 S.W.2d 875 (1934). It is our conclusion under these facts that the deed did not create new rights and obligations, but instead clarified the existing rights under the stipulated judgment.

The plaintiff contends that the court should construe any ambiguity in the contract against the commissioner because the language in both instruments was drafted by him. It is a general rule of construction that whenever two interpretations of a contract seem equally possible, the language will be construed against the party responsible for its inclusion. *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 145–46, 328 A.2d 711 (1973); *Cooper* v. *Malavese,* supra, 171. The shortcoming in the plaintiff's argument is that in this case there is no ambiguity in the agreement. The clarifying terms in the deed provided a definitive interpretation that obviates the need to rely on rules of construction for ambiguous terms.

The plaintiff further argues that the deed improperly modified the stipulated judgment without any additional consideration. We are not persuaded by this argument. In this case the deed provided explanation, not modification, of existing rights and obligations. Even if the deed had differed from the stipulated judgment, however, under the principle of merger by deed, the terms of the deed would automatically replace and supersede the terms of the underlying contract, absent a reservation of collateral rights. See *Knight* v. *Breckheimer,* 3 Conn. App. 487, 490–91, 489 A.2d 1066 (1985).

There is no error.

In this opinion the other justices concurred.