******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# A.C. CONSULTING, LLC *v.* ALEXION PHARMACEUTICALS, INC.
## (AC 41814)

Prescott, Elgo and Sheldon, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia, breach of contract. In January, 2013, the plaintiff had entered into a service contract with the defendant, in which the plaintiff agreed to provide the defendant with administrative support and coordination of security details for heightened risk employee travel. The contract provided, inter alia, that it was operative through December 31, 2016, but that the defendant could terminate the contract upon five days' written notice. The defendant terminated its contract with the plaintiff in November, 2014. Subsequently, the plaintiff commenced the present action and filed a substitute complaint, which alleged breach of contract, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. The defendant filed a motion to strike the complaint, which the trial court granted. Thereafter, the court granted the defendant's motion for judgment and rendered judgment thereon, from which the plaintiff appealed to this court. On appeal, the plaintiff claimed, inter alia, that, on the basis of the allegations that, prior to executing the contract, the defendant had represented to the plaintiff that the contract would remain in effect for more than three years, the trial court should have concluded that the defendant was estopped from relying on the contract's termination provision, and that, because the defendant should have been estopped from terminating the contract, the court should have viewed the allegation in the complaint that the defendant terminated the contract prior to its expiration as sufficient to allege breach of contract, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. *Held*:

1. The plaintiff could not prevail on its claim that, in considering the legal sufficiency of the substitute complaint, the trial court improperly failed to consider whether the applicable contractual period was ambiguous and to construe the claimed ambiguity against the defendant as the drafter of the contract, which was based on the plaintiff's claim that an ambiguity existed with respect to whether the defendant's termination of the contract prior to the expiration of the contractual period constituted a breach of the contract because the contract did not expire by its terms until December 31, 2016, and yet the contract also provided in a separate provision that the defendant could terminate the contract at any time with five days' written notice; the contract was not ambiguous in the manner suggested by the plaintiff, as although paragraph 1 of the contract did set forth a contractual period of almost four years, that provision was also expressly qualified with the language "unless terminated earlier" and contained a cross-reference to paragraph 7, which sets forth the conditions upon which the contract may be terminated, and, when read together, the intent of the parties in agreeing to the terms in the two provisions was to resume their contractual relationship for almost four years unless the defendant chose to terminate the relationship earlier by providing the plaintiff with five days' written notice.

2. The plaintiff's claim that the trial court improperly concluded that the plaintiff's allegation that the defendant terminated the contract without giving the plaintiff sufficient notice under the contract was legally insufficient to state a claim for breach of contract was unavailing; the substitute complaint did not provide the necessary factual allegations describing the manner in which the notice the plaintiff received was insufficient, as the complaint did not directly reference the contract's notice provision, which provided that the contract could be terminated by the defendant upon five days' written notice, and did not specify whether the notice the plaintiff received was insufficient because it received less than five days' notice or because the notice was not in writing, and even if the bald allegation of insufficient notice of termination under the contract, without any additional facts, was sufficient to plead a breach of the

agreement, the plaintiff failed to allege that it was harmed by the insufficient notice, as the breach of contract count as pleaded focused entirely on the defendant's decision to terminate the parties' contract prior to the expiration of the contractual period, despite oral assurances that the defendant intended to continue with its business arrangement with the plaintiff, and the plaintiff made no factual allegation that it had been damaged by the defendant's failure to give five days' written notice.

3. The plaintiff could not prevail on its claim that the trial court improperly concluded that the allegations that the defendant made assurances regarding the length of the contract were insufficient to plead any of the plaintiff's causes of action, as any reliance by the plaintiff on the alleged representation would have been unreasonable as a matter of law in the face of the fully integrated written contract containing a merger clause; the plaintiff executed a fully integrated contract with a merger clause that provided in express terms that the contract could not be altered except by a written agreement and that the contract terms superseded any prior understanding between the parties, and, thus, any reassurances that the defendant may have provided to the plaintiff prior to the execution of the contract regarding the length of the parties' anticipated business relationship were superseded by the provisions in the contract stating that the contract could be terminated by the defendant, at will, upon five days' written notice, and any oral assurances, promises, or representations made during the course of the contractual period that contradicted the provisions of the contract would have had no legal effect unless committed to a writing signed by both parties.

Argued September 12—officially released November 12, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Ecker, J.*, granted the defendant's motion to strike the plaintiff's amended complaint; thereafter, the court, *Wahla, J.*, granted the defendant's motion to strike the plaintiff's substitute complaint; subsequently, the court, *Wahla, J.*, granted the defendant's motion for judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Kevin D. Scully*, for the appellant (plaintiff).

*Jeffrey R. Babbin*, with whom were *Christine Salmon Wachter* and, on the brief, *Lawrence Peikes*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The plaintiff, A.C. Consulting, LLC, appeals from the judgment of the trial court rendered in favor of the defendant, Alexion Pharmaceuticals, Inc., following the granting of the defendant's motion to strike the plaintiff's substitute complaint. The substitute complaint contained three counts alleging, respectively, breach of contract, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. On appeal, the plaintiff claims that, in evaluating the legal sufficiency of the allegations in the substitute complaint, the trial court improperly (1) failed both to find an ambiguity in the parties' contract regarding its operative length and to construe that ambiguity against the defendant as the drafter of the contract, (2) concluded that the plaintiff's allegation that the defendant terminated the contract without giving the plaintiff "sufficient notice under the contract" was legally insufficient to state a claim for breach of contract, and (3) concluded that the allegations that the defendant or the defendant's agent made assurances regarding the length of the contract were insufficient to plead any of the plaintiff's causes of action, including negligent misrepresentation.[1] We affirm the judgment of the trial court.

The following facts, as alleged in the operative complaint, and procedural history are relevant to our resolution of the present appeal. In July, 2011, the plaintiff, through its sole member, James Dolan, entered into a service contract with the defendant, in which the plaintiff agreed to provide the defendant with "administrative support and coordination of security details for heightened risk employee travel." Dolan had acquired expertise and knowledge in the field of security during his lengthy employment with the Connecticut state police. The service contract expired by its terms on December 31, 2012. The operative complaint, however, alleged that the service contract expired on December 31, 2011. The parties subsequently entered into a second service contract with similar terms in March, 2012. That contract expired on December 31, 2012.

In January, 2013, the parties entered into a third service contract (contract), which is the subject matter of the present action. Prior to executing the contract, the plaintiff, through Dolan, had expressed to the defendant its desire for a longer period of contractual commitment from the defendant. The defendant had assured Dolan that the plaintiff would have the defendant's security business "so long as he wanted it" and that, at the very least, he had an almost four year commitment from the defendant.[2] (Internal quotation marks omitted.) The contract provided that it was operative through December 31, 2016, a term of approximately four years. The contract further provided, however, that the plaintiff would act as an independent contractor and that the defendant could terminate the contract "upon five (5)

days written notice." The defendant's right to terminate the contract was otherwise unconditional. The contract contained no reciprocal provision that authorized the plaintiff to terminate the contract prior to its expiration. Finally, the contract contained a clause providing that (1) it could not be altered except by a written agreement signed by both parties, (2) it represented the entire agreement of the parties, and (3) it "supersede[d] all previous written and oral negotiations, commitments, and understandings."

In the summer of 2013, the defendant asked the plaintiff to create a job description for a new position within the defendant's organization titled "Senior Manager of Global Security." The defendant's director of global security, Robert Weronik, told Dolan that he should not apply for the position, reassuring Dolan that the plaintiff would have the defendant's heightened risk employee travel business for as long as the plaintiff wanted it. Weronik, however, knew, or should have known, that the new senior manager would "probably look to terminate the plaintiff."

The defendant terminated its contract with the plaintiff on November 17, 2014. The defendant did not cite to any breach of the contract by the plaintiff and failed to give sufficient notice of the termination. Prior to terminating the contract, the defendant had reduced the plaintiff's hours and responsibilities, and had required Dolan to "report to the [defendant] at least two days a week and prepare detailed reports to the defendant," all of which the plaintiff considered to be unilateral changes to the terms and conditions of the parties' contract. The plaintiff theorized that, during the course of its business relationship with the defendant, "the defendant gained vast knowledge from the plaintiff on the means and methods of security" and that "[w]hen the defendant had gained sufficient knowledge," it terminated its agreement with the plaintiff.

On October 13, 2016, the plaintiff commenced the underlying action. The initial complaint consisted of a single count that expressly alleged only a breach of the covenant of good faith and fair dealing. The defendant filed a request to revise, indicating that the complaint contained allegations that could be read as advancing additional theories of recovery, such as breach of contract or wrongful discharge, and asking the plaintiff to set forth each cause of action it intended to pursue in a separate count. The plaintiff objected to the request to revise but ultimately requested leave of the court to file a two count amended complaint. Count one of the amended complaint alleged that the defendant had breached an express term of the contract, and count two alleged that the defendant had breached the covenant of good faith and fair dealing.

The defendant filed a motion to strike the amended complaint, arguing that the first count failed as a matter

of law because the plaintiff had failed to allege what contractual term the defendant had breached, and the second count failed because the factual allegations were insufficient to establish that the defendant had breached any contractual obligation owed to the plaintiff or that the defendant had acted in bad faith. The court, *Ecker, J.*, granted the motion to strike, stating: "Accepting the plaintiff's factual allegations as true, and applying the legal standard governing a motion to strike, the court finds as a matter of law that nothing about the actions of the defendant breach any contractual terms or constitute a breach of the covenant of good faith and fair dealing. The plaintiff's arguments regarding procedural and substantive unconscionability do not help save either claim."[3]

On September 1, 2017, the plaintiff elected to replead; see Practice Book § 10-44;[4] and filed a substitute complaint. The substitute complaint contained three counts. Count one again alleged a breach of contract, count two alleged a new cause of action sounding in negligent misrepresentation,[5] and count three alleged a breach of the covenant of good faith and fair dealing. The plaintiff appended copies of the parties' three service contracts to the substitute complaint.[6]

The defendant filed a motion to strike the substitute complaint and a supporting memorandum of law. It argued first that, with respect to counts one and three of the substitute complaint, the plaintiff had added only a few new allegations to those set forth in the stricken amended complaint, none of which helped to overcome the deficiencies in the plaintiff's prior pleading, which the court had determined failed to state a legally cognizable cause of action. In addition to claiming that the prior ruling should be treated as the law of the case with respect to those counts alleging a breach of contract and a breach of the covenant of good faith and fair dealing, it also argued that, like the prior amended complaint, the breach of contract count failed as a matter of law because none of the defendant's alleged actions could be construed as breaching a contractual term. Similarly, the defendant asserted that the third count failed because the plaintiff both failed to allege that the defendant had breached any contractual obligation owed to the plaintiff and that the defendant had done so in bad faith.

With respect to the new cause of action alleging negligent misrepresentation, the defendant argued that that count also failed to state a cognizable claim for relief because the plaintiff's allegations that it relied on statements made by the defendant's agent were of no legal significance in light of the fully integrated contract, which, by its express terms, precluded the plaintiff from relying on any alleged oral representations that were inconsistent with the contract's terms.

The plaintiff filed an objection to the motion to strike

and a memorandum in opposition. It argued that the substitute complaint contained additional allegations not found in the amended complaint, rendering the law of the case doctrine inapplicable. It further argued that the allegations that the defendant had assured Dolan that "his job" was secure despite terminating the contract prior to its expiration were legally sufficient to support a claim of negligent misrepresentation. The defendant filed a reply memorandum, and the plaintiff filed a surreply memorandum.

The court, *Wahla, J.*, issued a decision on May 1, 2018, rejecting the plaintiff's arguments and granting the motion to strike all counts. Specifically, after setting forth the appropriate standard of review, the court stated as follows: "In the present case, the added allegations of the [substitute] complaint . . . substantially [repeat] the same core allegations of the amended complaint pertaining to the breach of contract and the breach of the covenant of good and fair dealing. The additional allegations are conclusory and fail to state a legally sufficient claim for breach of contract or breach of the covenant of good faith and fair dealing. In the plaintiff's objection, the cases relied upon by [it are] distinguishable from the case at bar. Therefore, both count[s] one and three are hereby ordered stricken.

"The additional count of negligen[t] misrepresentation of the [substitute] complaint fails as a matter of law, as no reliance can be made upon oral words in the existence of the written contract. . . . Hence, count two is also ordered stricken." (Citation omitted.)

The plaintiff did not file a new pleading within fifteen days after the granting of the motion to strike. See Practice Book § 10-44. The defendant thereafter filed a motion for judgment in its favor and against the plaintiff on the stricken complaint. The court granted the motion and rendered judgment in favor of the defendant without trial. This appeal followed.

The law governing our review of a trial court's decision on a motion to strike is well settled. "A motion to strike shall be used whenever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . . ." Practice Book § 10-39 (a). "Appellate review of a trial court's decision to grant a motion to strike is plenary." *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 667, 212 A.3d 226 (2019). "We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quota-

tion marks omitted.) *Doe* v. *Cochran*, 332 Conn. 325, 333, 210 A.3d 469 (2019). Because a "motion to strike is essentially a procedural motion that focuses solely on the pleadings," a reviewing court cannot "consider material outside of the pleading that is being challenged by the motion." (Internal quotation marks omitted.) *Dlugokecki* v. *Vieira*, 98 Conn. App. 252, 256, 907 A.2d 1269, cert. denied, 280 Conn. 951, 912 A.2d 483 (2006). Nevertheless, "[a] complaint includes all exhibits attached thereto." Id., 258 n.3; see also Practice Book § 10-29.

I

The plaintiff first claims that, in considering the legal sufficiency of the substitute complaint, the court improperly failed to consider whether the applicable contractual period was ambiguous and to construe the claimed ambiguity against the defendant as the drafter of the contract. We are not persuaded.

The plaintiff argues that an ambiguity existed with respect to whether the defendant's termination of the contract prior to the expiration of the contractual period constituted a breach of the contract because the contract did not expire by its terms until December 31, 2016, establishing a contractual period of approximately four years, and yet the contract also provided in a separate provision that the defendant could terminate the contract at any time with five days' written notice. Although the plaintiff's brief is not a model of clarity, we construe the argument as follows: if the court recognized the purported ambiguity in the contract, and resolved it against the defendant as the drafter of the contract, then the allegation in the complaint that the defendant terminated the contract prior to the expiration of the stated contractual period could reasonably be construed as alleging that the defendant breached an express term of the contract, which in turn should have precluded the court from granting the motion to strike as to count one. The plaintiff's claim lacks merit, however, because the contract simply is not ambiguous in the manner suggested by the plaintiff.

"[W]hether a contract is ambiguous is a question of law for the court." *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 200, 901 A.2d 666 (2006). "[A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. . . . The fact that the parties interpret the terms of a contract differently, however, does not render those terms ambiguous." (Citation omitted; internal quotation marks omitted.) Id., 199–200. "[W]e accord the language employed in the contract a rational

construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Moreover, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *EH Investment Co., LLC* v. *Chappo, LLC*, 174 Conn. App. 344, 358, 166 A.3d 800 (2017). With these principles in mind, we turn to the language of the contract.

The plaintiff argues that the parties' contract was ambiguous because paragraphs 1 and 7 of the contract "cannot be reconciled." Paragraph 1 of the contract provides in relevant part: "This Agreement shall be effective from the date first written above until December 31, 2016 *unless terminated earlier in accordance with Paragraph 7*." (Emphasis added.) Paragraph 7 provides in relevant part: "This Agreement . . . may be terminated by the [defendant] upon five (5) days written notice." Contrary to the plaintiff's argument, these paragraphs are not contradictory. Although paragraph 1 does, in fact, set forth a contractual period of nearly four years, that provision is also expressly qualified with the language "unless terminated earlier . . . ." Rather than contradicting paragraph 7, paragraph 1 expressly contains a cross-reference to paragraph 7, which simply provides the conditions upon which the contract may be terminated. Read together, as they must be, the intent of the parties in agreeing to those terms was to resume their contractual relationship for almost four years unless the defendant chose to terminate the relationship earlier by providing the plaintiff with five days' written notice.

The fact that the term setting forth the length of the contract period is expressly qualified to allow early termination and contains a cross-reference to the provision that authorizes at-will termination by the defendant distinguishes the present case from the one appellate case cited by the plaintiff in support of its claim, *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, 32 Conn. App. 530, 630 A.2d 115 (1993). That case involved the construction of inconsistent or conflicting clauses in a contract; id., 532–34; which we simply do not have here. The plaintiff's claim that the contract was ambiguous and that the court should have construed its ambiguity against the defendant in order to conclude that the defendant had no contractual right to terminate the parties' business relationship prior to December 31, 2016, is simply without merit, and it provides no basis for overturning the court's decision to grant the motion to strike the breach of contract count.

II

The plaintiff next claims that the court improperly determined that the substitute complaint failed to state

a legally sufficient claim for breach of contract, particularly given the new allegation in the substitute complaint that the defendant terminated the parties' contract without providing the plaintiff with "sufficient notice under the contract." The plaintiff contends that this constituted a legally sufficient allegation that the defendant had violated a specific provision of the contract, namely, the notice provision of the termination clause. We are not persuaded that this allegation, without more, satisfied the plaintiff's pleading obligations with respect to its breach of contract claim.

A complaint "shall contain a concise statement of the facts constituting the cause of action . . . ." Practice Book § 10-20. "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations in his complaint. . . . A plaintiff may not allege one cause of action and recover on another." (Internal quotation marks omitted.) *Criscuolo* v. *Mauro Motors, Inc.*, 58 Conn. App. 537, 544–45, 754 A.2d 810 (2000). "Conclusions of law, absent sufficient alleged facts to support them, are subject to a motion to strike." *Fortini* v. *New England Log Homes, Inc.*, 4 Conn. App. 132, 134–35, 492 A.2d 545, cert. dismissed, 197 Conn. 801, 495 A.2d 280 (1985). "The elements of a breach of contract action are [1] the formation of an agreement, [2] performance by one party, [3] breach of the agreement by the other party and [4] damages." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 117 Conn. App. 550, 558, 979 A.2d 1055, cert. denied, 294 Conn. 913, 983 A.2d 274 (2009). "To survive a motion to strike, the plaintiff's complaint must allege all of the requisite elements of a cause of action." *Stancuna* v. *Schaffer*, 122 Conn. App. 484, 489, 998 A.2d 1221 (2010).

The court, in granting the first motion to strike in this matter, indicated that none of the defendant's alleged actions, as set forth in the initial complaint, reasonably could be construed as alleging that the defendant had breached any particular contractual term. In other words, the complaint failed to allege facts sufficient to satisfy the third element of an action for breach of contract. In granting the second motion to strike, the court concluded that the plaintiff had not changed the core allegations of its breach of contract claim and that the added allegations did not remedy the initial complaint's failure to state a legally sufficient cause of action. We agree with that assessment.

On appeal, the plaintiff directs our attention to the added allegation in the substitute complaint that the defendant terminated the contract without providing the plaintiff with "sufficient notice under the contract," arguing that this allegation was sufficient to allege a breach of a specific contractual provision. That allegation, however, must be read and evaluated within the

context of the allegations in the count as a whole.

Although the plaintiff generally alleged that it did not receive "sufficient notice" prior to the defendant's termination of the contract, it did not provide the necessary factual allegations describing the manner in which the notice it received was insufficient. The contract's termination provision provided in relevant part that the contract could be terminated by the defendant "upon five (5) days written notice." Accordingly, insufficient notice could refer to a defect in either the timing of the notice, the form of the notice, or both. The complaint does not directly reference the contract's notice provision. The plaintiff also does not allege whether the notice it received was insufficient because it received less than five days' notice or because the notice was not in writing. Although the plaintiff argues on appeal that it was only provided with four days' notice, that factual allegation is missing from the complaint. The purpose of fact pleading is to put the defendant and the court on notice of the important and relevant facts claimed and the issues to be tried. See *Harris* v. *Shea*, 79 Conn. App. 840, 842–43, 832 A.2d 97 (2003). Those facts are lacking here.

Furthermore, even broadly construed, the breach of contract count as pleaded focuses entirely on the defendant's decision to terminate the parties' contract prior to the expiration of the contractual period, despite oral assurances that the defendant intended to continue with its business arrangement with the plaintiff. Said another way, it was the termination of the contract itself, not the precise manner in which the defendant effectuated that termination, that formed the basis for the plaintiff's claims of breach of contract and breach of the covenant of good faith and fair dealing.[7] Even if the plaintiff intended that the failure to give five days' notice would serve as an additional basis for its claim of breach of contract, the plaintiff made no factual allegation that it had been damaged by that particular alleged breach. The sole allegation of damages in the complaint regarding breach of contract was that "[a]s a result of *the defendant's termination of the contract*, the plaintiff has lost the benefit of its bargain and suffered financial loss." (Emphasis added.) Because damages are an element of a cause of action for breach of contract, in order to recover for breach of contract based on a lack of sufficient notice prior to termination, the plaintiff was required to allege how it was damaged by the lack of "sufficient notice . . . ." Such allegations are lacking in the substitute complaint.

Although we must read the pleadings broadly, the plaintiff must still allege sufficient facts that, if proven true, would establish all elements of the cause of action alleged. Even if we were to assume for the sake of argument that a bald allegation of insufficient notice of termination under the contract, without any additional

facts, was sufficient to plead a breach of the agreement, the plaintiff failed to allege that it was harmed by the purported one day lack of notice. We agree with the court's assessment that, viewed in a light most favorable to upholding their legal sufficiency, the pleadings still fail to allege facts sufficient to state a cause of action for breach of contract.

### III

Finally, the plaintiff claims that, on the basis of the allegations that the defendant, through its agent, had represented to the plaintiff that the contract would remain in effect for more than three years, the trial court should have concluded that the defendant was estopped from relying on the contract's termination provision. According to the plaintiff, because the defendant should have been estopped from terminating the contract due to the assurances made prior to and following the execution of the contract, the court should have viewed the allegation in the complaint that the defendant terminated the contract prior to its expiration as sufficient to allege both a breach of the contract and a breach of the covenant of good faith and fair dealing.[8] Furthermore, the plaintiff claims that those same alleged representations or assurances supported a cause of action for negligent misrepresentation. Because we conclude that any reliance by the plaintiff on the alleged representation would have been unreasonable as a matter of law in the face of a fully integrated written contract containing a merger clause, the allegations are simply insufficient to support any of the causes of action alleged in the operative complaint.

An integrated contract, meaning "one that the parties have reduced to written form and which represents the full and final statement of the agreement between the parties . . . must be interpreted solely according to the terms contained therein. Whether a contract is deemed integrated oftentimes will turn on whether a merger clause exists in the contract. . . . The presence of a merger clause in a written agreement establishes conclusive proof of the parties' intent to create a completely integrated contract and, unless there was unequal bargaining power between the parties, the use of extrinsic evidence in construing the contract is prohibited. . . .

"We long have held that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, *or prior or contemporaneous conversations, or circumstances, or usages* [*etc.*], in order to learn what was intended, or *to contradict what is written*, would be dangerous and unjust in the extreme.

. . . Although there are exceptions to this rule, we continue to adhere to the general principle that the unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence. . . . Courts must always be mindful that parties are entitled to the benefit of their bargain, and the mere fact it turns out to have been a bad bargain for one of the parties does not justify, through artful interpretation, changing the clear meaning of the parties' words." (Citations omitted; emphasis added; internal quotation marks omitted.) *EH Investment Co., LLC* v. *Chappo, LLC*, supra, 174 Conn. App. 359–60.

It is axiomatic that to prevail on a claim of estoppel, "it is not enough that a promise was made; *reasonable reliance* thereon, resulting in some detriment to the party claiming the estoppel, also is required." (Emphasis added.) *Ferrucci* v. *Middlebury*, 131 Conn. App. 289, 305, 25 A.3d 728, cert. denied, 302 Conn. 944, 31 A.3d 382 (2011). Similarly, in order to recover on a claim of negligent misrepresentation, "the plaintiff is required to prove *reasonable reliance* on the defendant's misrepresentation." (Emphasis added.) *National Groups, LLC* v. *Nardi*, 145 Conn. App. 189, 193, 75 A.3d 68 (2013).

Here, the plaintiff executed a fully integrated contract with a merger clause that provided in express terms that the contract could not be altered except by a written agreement and that the contract terms superseded any prior understanding between the parties. Thus, any reassurances that the defendant may have provided to the plaintiff prior to the execution of the contract regarding the length of the parties' anticipated business relationship were superseded by the provisions in the contract stating that the contract could be terminated by the defendant, at will, upon five days' written notice. Moreover, any oral assurances, promises, or representations made during the course of the contractual period that contradicted the provisions of the contract similarly would have had no legal effect unless committed to a writing signed by both parties. In other words, it would have been unreasonable as a matter of law for the plaintiff to have relied on any alleged representations by the defendant or its agent suggesting that the plaintiff could expect to continue providing the defendant security service for more than three years. Such allegations in the complaint, therefore, were legally insufficient to support any of the causes of action alleged by the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the plaintiff briefs its estoppel and negligent misrepresentation claims separately, we address them together because we conclude that they fail for primarily the same reason.

[2] The plaintiff alleged in its complaint that, on the basis of these assurances, it had "refrained from developing other clients."

[3] The plaintiff argued in its opposition to the first motion to strike that the contract provision permitting the defendant to terminate the contract

unilaterally was both procedurally and substantively unconscionable. The plaintiff contended that it was procedurally unconscionable because the defendant, who drafted the agreement, was a large corporation that had superior bargaining power over the plaintiff, which was a small, single member company. The plaintiff also contended that the provision was substantively unconscionable because, by its terms, only the defendant could terminate the agreement at will, whereas the plaintiff was bound for the duration of the contractual period. Ordinarily, unconscionability is raised as a defense to the enforcement of a contract. See *Bender* v. *Bender*, 292 Conn. 696, 731–32, 975 A.2d 636 (2009). In the present case, the plaintiff seems to invoke it to bolster its argument that the court should construe the allegation that the defendant terminated the contract before the contractual period expired as alleging a breach of the contract because, *if* the court deemed the termination provision unconscionable and, thus, unenforceable, the defendant would have had no legal right to terminate the contract as it did. The plaintiff did not attempt to revive this unconscionability argument either in opposition to the second motion to strike or as an issue on appeal. Accordingly, we do not address it further.

[4] Practice Book § 10-44 provides in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading," and if the party fails to do so, "the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint, or count thereof. . . ."

[5] We note that the right to file a new pleading under Practice Book § 10-44, "is limited to making those corrections needed to render the claims set forth in the original pleading legally sufficient. It is not an opportunity to file wholly amended pleadings that assert new legal claims . . . permission for which ordinarily could be obtained only in accordance with the provisions of Practice Book § 10-60. . . . An example of a proper pleading filed pursuant to Practice Book § 10-44 is one that suppl[ies] the essential allegation lacking in the complaint that was stricken." (Citations omitted; internal quotation marks omitted.) *Perugini* v. *Giuliano*, 148 Conn. App. 861, 878, 89 A.3d 358 (2014). Unlike with the amended complaint, the plaintiff did not request permission from the court to file the substitute complaint pursuant to Practice Book § 10-60. Neither the defendant nor the court, however, raised this as an issue in litigating the second motion to strike, nor has the defendant raised it on appeal as an alternative ground for affirmance with respect to count two.

[6] Practice Book § 10-29 (a) provides in relevant part: "Any plaintiff . . . desiring to make a copy of any document a part of the complaint shall refer to it as Exhibit A, B, C, etc. . . . Except as required by statute, the plaintiff shall not annex the document or documents referred to as exhibits to the complaint, or incorporate them in the complaint, at full length . . . ." The entirety of the contract, therefore, was a part of the allegations of the complaint.

[7] This construction of the plaintiff's complaint is consistent with the argument made by the plaintiff in opposing the second motion to strike. In its opposition, the plaintiff argued that the additions it made to the substitute complaint "allege that the defendant terminated the agreement without citing a breach and that the agreement set out a three year agreement and the defendant *breached by terminating the agreement prior to the expiration of those three years*." (Emphasis added.)

[8] As with the prior claim, the plaintiff fails to explain precisely how this claim of error relates to the court's granting of the motion to strike. To the extent that the plaintiff intends to argue that the allegations of estoppel in the complaint were sufficient to state a cognizable cause of action for promissory estoppel, the plaintiff never asked the trial court to construe the complaint in that fashion, and even if it had, the complaint would fail to state a claim of promissory estoppel for the same reasons that apply to the causes of action that were explicitly alleged.